**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SUSAN CAROLINE SOMERS,

      Plaintiff,

v.                                       Case No. 10-11123
                                               Hon. Lawrence P. Zatkoff

CHARTER TOWNSHIP OF CLAYTON,
CHARTER TOWNSHIP OF CLAYTON
POLICE DEPARTMENT, DALE JONES,
MICHAEL POWERS, CHARLOTTE
LOUISE BROWN, ISAIAH FULLER, and
STEVEN MOORE,

      Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 6, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment [dkt 26] and

Plaintiff's Motion to Consolidate [dkt 39]. Defendants' Motion for Summary Judgment has been fully

briefed. Defendants filed a response to Plaintiff's Motion to Consolidate. The Court finds that the facts

and legal arguments are adequately presented in the parties' papers such that the decision process would

not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby

ORDERED that the Motions be resolved on the briefs submitted. For the following reasons, Defendants'

Motion for Summary Judgment is GRANTED and Plaintiff's Motion to Consolidate is DENIED as

moot.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

On September 1, 2009, Plaintiff Susan Somers ("Plaintiff") arrived at the Clayton Township board meeting ("the Meeting")[1] at approximately 8:35 p.m.[2] to participate in an open forum discussion regarding the township's police reserve officer program.   Plaintiff was initially acknowledged by the Clayton Township board members to speak and she began voicing her concerns over the reserve officer program.   According to Defendants Sergeant Charlotte Louise Brown ("Sgt. Brown"), Police Chief Michael Powers ("Chief Powers"), and Township Deputy Supervisor Dale Jones ("Jones"), and Clayton Township attorney Kenneth Tucker ("Tucker"), Plaintiff spoke in a "loud" and "forceful" manner, and continued to converse despite attempts by the board members to either conclude or adjourn the Meeting. During the Meeting, Defendant Sgt. Brown allegedly observed Plaintiff stumble over Defendant Jones's feet as she walked by him, which was later attested to by Defendant Jones at his deposition.

Plaintiff frequented most board meetings, but on September 1, 2009, Plaintiff's speech pattern was apparently "baffled" and her demeanor was "different," according to Defendants Sgt. Brown and Jones—also regular attendees of board meetings.   Further, Tucker and Defendants Chief Powers and Jones separately testified at their depositions that at some point either during or after the Meeting, they smelled alcohol emanating from Plaintiff's body or mouth.[3]  Plaintiff denies these characterizations of her behavior.

The Meeting was ultimately adjourned shortly after Plaintiff's arrival.   Based in part on her observations of Plaintiff during the Meeting and, in other part, on three individuals[4] separately signaling a

---

[1]  As agreed by all parties to this litigation, the "formal" township board meeting morphed into a town hall meeting, wherein members of the public were allowed to engage the board with questions.

[2]  The meeting began at 7:00 p.m.

[3]  This information was also contained in the police report that was produced regarding Plaintiff's traffic stop and arrest.

[4]  The three individuals were Defendant Jones, Tucker, and Don Adams, a reserve officer attending the Meeting.

"C-cup" gesture[5] to her, Defendant Sgt. Brown contacted an officer on road patrol—Defendant Isaiah Fuller ("Fuller")—and ordered him to follow Plaintiff's vehicle after the Meeting.[6]  Despite Defendant Sgt. Brown's suspicions that Plaintiff had consumed some amount of alcohol prior to the Meeting and directing Defendant Fuller to observe Plaintiff's driving ability, Defendant Sgt. Brown testified that she did not have "probable cause" to detain Plaintiff before she left the Meeting.

At approximately 9:05 p.m., Plaintiff exited the Meeting and left in her vehicle.  Officer Fuller, who was parked near the township hall, followed Plaintiff.  Shortly thereafter, Defendant Fuller activated his emergency signal lights and initiated a traffic stop.  Many of the details surrounding Plaintiff's traffic stop are disputed, which the Court will note accordingly.

According to Defendant Fuller, Plaintiff's vehicle was weaving in between and either touching or crossing the center and shoulder lines of the road.  Defendant Fuller stated that the combination of the weaving and Defendant Sgt. Brown's advisement of Plaintiff's possible intoxication were the bases for the traffic stop.  Defendant Fuller activated his Video Microphone ("VidMic") upon exiting his patrol car.[7]  The Court reviewed the VidMic recording in its entirety, which spanned approximately two and one-half hours.

Officer Fuller approached Plaintiff's vehicle, advised her to end her cell phone call, and asked for her identification, registration, and proof of insurance.  Officer Fuller notified Plaintiff that her vehicle was weaving between the center and shoulder lines.  Plaintiff ostensibly acknowledged the possibility that she was weaving by stating, "I'm sorry . . . I was lighting up a cigarette."[8]  Yet, Defendant Fuller observed Plaintiff's cigarette to be "more than half-way gone" at this time.  Defendant Fuller also

---

[5] A "C-cup" sign, according to Defendant Sgt. Brown, is a universal and commonly-known gesture indicating that a person has been consuming alcohol.
[6] Defendant Sgt. Brown also told Defendant Fuller that if Plaintiff "drove fine" to "let her drive on out of Clayton."
[7] This device is a fully operational microphone which houses a color digital video recorder and digital audio recorder, and is attached to an officer's person—in this case, Defendant Fuller.
[8] Plaintiff later denied on the VidMic that she was weaving in and out of her lanes.  Additionally, when asked at her deposition whether or not she was weaving or if her vehicle touched or crossed the road lines, she responded, "I don't believe so" and "I don't think it happened."

detected an odor of intoxicants emanating from Plaintiff's mouth and noticed that Plaintiff's eyes were "glassy."

Shortly after Plaintiff was pulled over, Tammy Kapraun (Plaintiff's friend) arrived at the scene. Defendant Fuller contacted Defendant Sgt. Brown to advise her of Plaintiff's traffic stop and to request back-up due to Tammy Kapraun's arrival. A deputy of the Genesee County Sheriff's Department responded.

Defendant Fuller asked Plaintiff to exit her vehicle and undergo field sobriety tests, to which Plaintiff consented. The results of the sobriety tests are disputed by the parties. Defendant Fuller argues that Plaintiff failed at least three out of five tests.[9] On the other hand, Plaintiff essentially asserts that she passed the field sobriety tests and complied with Defendant Fuller's instructions, despite Defendant Fuller's alleged improper administration of some of the tests. Again, the Court independently reviewed the tests and observed the following.

The first test required Plaintiff to count backward from 67 to 47. She failed this test because, instead of stopping at 47 as commanded, she ended with the number "49" and asked, "What do you want me to count to?". Plaintiff successfully completed the second test, the "ABC" test, which involved recitation of the letter "D" to the letter "P". For the third test, the "one-legged stand" test, Defendant Fuller directed Plaintiff to stand on her right foot for twelve (12) seconds. This test was conducted three (3) times. It appears from the VidMic recording that Plaintiff failed the first and second attempts, but was successful on the third attempt.

For the fourth test, Plaintiff was instructed to alternatively touch her nose with each index finger six (6) times. She touched her nose with each index finger five (5) times, thus failing to comply with Defendant Fuller's directions. Fifth, for the "walk and turn" test, Plaintiff had to walk, heel-to-toe, ten

---

[9] Defendant Fuller originally believed that Plaintiff passed the "walk and turn" test. But, as testified during his deposition, Defendant Fuller was improperly focusing on Plaintiff's upper body and not her feet, and now believes after recently reviewing the VidMic recording that Plaintiff failed this test.

steps in one direction in a straight line, complete a 180-degree turn, and then walk eleven steps back to where she started. Based on the VidMic recording, Plaintiff seemingly passed this test.

Defendant Fuller then asked Plaintiff if she would submit to a preliminary breath test ("PBT"). According to Defendant Fuller, if the results of the PBT were unremarkable Plaintiff was free to leave. It was at this moment that Plaintiff began questioning the propriety of the stop. Pointedly, Plaintiff asked if she was pulled over because of her comments at the Meeting. Defendant Fuller repeatedly assured Plaintiff that this traffic stop was based on Plaintiff's weaving. It was also at this time that Plaintiff requested to "call 911" and asked "what [her] rights are."

Defendant Fuller's attempted administration of the PBT was less than successful, allegedly based in part on Plaintiff's failure to exert enough air for the PBT to issue a full reading. Eventually, Defendant Fuller obtained partial readings of 0.073 and 0.08.

Defendant Steven Moore ("Moore")—a Clayton Township police officer—then arrived on the scene. Defendant Moore conferred with Defendant Fuller regarding the results of Plaintiff's field sobriety tests and PBT. Defendant Moore requested that Plaintiff submit to another PBT. Plaintiff refused.

Plaintiff was ultimately placed under arrest for operating while intoxicated ("OWI") as a result of the partial 0.08 PBT reading. Plaintiff was transported to the Swartz Creek police station for purposes of obtaining a DataMaster breathalyzer test ("DataMaster test"). Once at the station, Defendant Moore asked Plaintiff no less than four (4) times if she would submit to the DataMaster test. And while Plaintiff claimed during her deposition that she never refused to take the DataMaster test, the VidMic recording appears to illustrate that Plaintiff deflected Defendant Moore's requests by asking what her rights were and that she wanted a drink of water.

Plaintiff's husband ("Mr. Somers") then arrived to the Swartz Creek police station. Defendant Fuller and Mr. Somers conversed briefly outside the presence of Defendant Moore and Plaintiff.

5

Defendant Fuller explained to Mr. Somers, among other things, that Plaintiff was not cooperating and that Defendant Moore, at Plaintiff's request, attempted to call an attorney for Plaintiff.  Mr. Somers stated during this conversation that Plaintiff "only had like three beers" that evening.

After their discussion, Defendant Fuller and Mr. Somers re-entered the room where Plaintiff was sitting.  Apparently, when Defendant Fuller and Mr. Somers exited the room to talk, Plaintiff agreed to submit to the DataMaster test.[10]  But, according to Defendant Moore—who administered the test—no result was produced because Plaintiff was either blowing improperly or not forceful enough.  Defendant Moore explained the circumstances surrounding the DataMaster test at his deposition as follows: Plaintiff "refused to make a tight seal on the straw leaving her mouth wide open around it, and it was actually blowing around the straw onto my hand and not through the straw;" "refused to blow through the tube as requested, so there was no air going through the straw;" and "never once put her mouth on the tube itself."  Plaintiff again denied that she did anything but cooperate.

Because a proper test result could not be obtained, a search warrant was utilized to draw Plaintiff's blood.  A toxicology report later estimated Plaintiff's blood alcohol content on the date and time of the traffic stop (approximately 9:13 p.m. on September 1, 2009) to be between 0.10–0.13.  On September 2, 2009, Plaintiff was issued a citation charging her with the following misdemeanors: (1) OWI and (2) Refused Breath Test.

**B. PROCEDURAL BACKGROUND**

Plaintiff originally filed her action against the above-named Defendants in Genesee County Circuit Court on February 18, 2010.  Defendants removed the action to the Eastern District of Michigan on March 19, 2010, and the case was assigned to Judge Ann Diggs Taylor.

---

[10] This cannot be confirmed by observing the VidMic, as Defendant Fuller had left the room.

On July 13, 2010, Judge Taylor entered a stipulated order dismissing Defendant Genesee County Prosecutor. On the same date, Judge Taylor also entered an order staying the case pending the outcome of Plaintiff's state-level criminal trial.

Genesee County headed the prosecution of Plaintiff's state charges. In that action, Plaintiff brought a motion to suppress the results of her blood test based on two grounds. First, Plaintiff argued that the initial traffic stop conducted by Defendant Fuller violated the Fourth Amendment. Additionally, Plaintiff argued that the search warrant issued to obtain her blood should be quashed. While the search warrant was quashed due to inconsistencies and mistakes in the affidavit seeking the warrant, the lower court determined that Plaintiff's traffic stop was valid. Following the district court's ruling on the motion to suppress, Plaintiff and the Genesee County Prosecutor entered into a consent agreement whereby the OWI charge was dismissed in exchange for Plaintiff agreeing to plead guilty to a civil infraction of littering.[11]

During the stay, this case was reassigned from Judge Taylor to the undersigned. On November 1, 2011, the Court entered an order lifting the stay. Two motions are currently pending before the Court: (1) Defendants' Motion for Summary Judgment; and (2) Plaintiff's Motion to Consolidate.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

---

[11] When Defendant Fuller requested that Plaintiff "put out" her cigarette during the traffic stop, Plaintiff threw the cigarette onto the ground.

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'–that is, pointing out to the district court– that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. MOTION TO CONSOLIDATE

As an initial matter, the Court briefly addresses Plaintiff's Motion to Consolidate. Plaintiff seeks to consolidate this matter with case no. 12-13878 ("Somers II"), also pending before the undersigned. In Somers II, Plaintiff filed a complaint against the same Defendants "clarifying her 42 U.S.C. [§] 1983 claims." Because the statute of limitations was set to expire on her claims, and fearful that the Court

would not have adequate time to entertain a motion for leave to file an amended complaint in the instant case before such expiration, Plaintiff filed this separate complaint.

The Court may, in the interest of judicial efficiency, consolidate if such cases involve a common question of law or fact.  Fed. R. Civ. P. 42(a).  The decision to consolidate cases involving the same factual or legal questions is a matter within the discretion of the trial court.  *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993).  In deciding whether to consolidate cases, the court should consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.*

While the instant case and case no. 12-13878 involve identical parties, factual allegations and strikingly similar claims, pursuant to this Opinion and Order the Court is granting summary judgment to Defendants on all of Plaintiff's claims.  Therefore, any request to consolidate case no 12-13878 with this matter is denied as moot.

The Court turns next to the merits of Defendants' summary judgment motion.

## B. COUNT II: VIOLATION OF FIRST AMENDMENT FREEDOMS

In her Complaint, Plaintiff alleges that the following facts violated her First Amendment rights:

> 60. On September 1, 2009, the Plaintiff went to the Clayton Township Hall to speak regarding an issue related to the "infirm" operation of the police department under the new regime, after the previous Township Attorney and Township Police Chief had been fired, whom [Plaintiff] was both familiar with and in favor of; with hostility being shown toward the Plaintiff for the comments that she had to make and the positions that she had taken.

> 61. While the Plaintiff was in attendance at the meeting, a then command Sergeant from the police department, believed to have received direction and/or at least concurrence from the Interim Police Chief, radioed a

patrol officer who was known to be on the road and specifically asked
him to position himself and otherwise "set himself up" to effectuate a
traffic stop and clearly intended arrest of the Plaintiff when [Plaintiff] left
the Township Hall, after speaking on issues that were not popular with
the current chief and command officers of the police department; which
comments were alleged to be based on intoxicated behavior.

62. Defendant Sergeant Brown specifically directed Defendant Officer
Fuller to "lie in wait" and make an arrest "based upon an [ALLEGED]
good reason" which was also said to be something that needed to be
filmed in order to corroborate the basis for pulling Plaintiff over in the
first place.

63. Under such circumstances, Plaintiff . . . was unquestionably "set up
for an arrest", with the basis of the traffic stop being inappropriately not
filmed, as specifically directed by the command officer, but which was
filmed to the extent that one can easily see that the Plaintiff was not
driving while intoxicated, by any standards that could reasonably implied
without technical equipment; and when technical equipment was utilized
it is apparent that it was used in a fashion that would produce an errant
result, for the purposes of punishing the Plaintiff for exercising First
Amendment freedoms and rights.

Based on these allegations, the Court interprets Count II of Plaintiff's Amended Complaint as

asserting a First Amendment retaliatory arrest claim under 42 U.S.C. § 1983.  In order to prevail on a civil

rights claim under 42 U.S.C. § 1983, Plaintiff must establish: (1) a person acting under color of state law,

(2) deprived Plaintiff of a right secured by the U.S. Constitution or laws of the United States.  *See, e.g.*,

*Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006).

With respect to the second factor—whether Defendants deprived Plaintiff of a constitutional

right—the Court must analyze the claim, *i.e.*, a First Amendment claim, in the context of a three-part test:

(a)     Was Plaintiff engaged in constitutionally protected activity?

(b)     Did the actions of the applicable Defendants cause Plaintiff to suffer an injury that would
        "chill a person of ordinary fitness from" continuing to engage in that activity?

(c)     Did Plaintiff's exercise of the constitutionally protected activity, at least in part, motivate
        the adverse action of such Defendants?

*Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). "A 'motivating factor' is essentially [a] but-for cause," *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), "without which the action being challenged simply would not have been taken," *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002).

This Court is well aware that, "[b]ecause direct evidence of motive is difficult to produce, 'claims involving proof of a defendant's intent seldom lend themselves to summary judgment' and 'circumstantial evidence may provide sufficient evidence of retaliatory intent to survive summary judgment.'" *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 218 (6th Cir. 2011) (quoting *Holzemer v. City of Memphis*, 621 F.3d 512, 525–26 (6th Cir. 2010)). Where "a plaintiff raises an inference that the defendant's conduct was motivated in part by plaintiff's protected activity, the burden shifts and defendant 'can demonstrate that it would have taken the same action in the absence of the protected activity.'" *Center for Bio-Ethical Reform*, 477 F.3d at 821 (quoting *Arnett v. Myers*, 281 F.3d 552, 560–61 (6th Cir. 2002)).

A relevant matter—yet unresolved by the Sixth Circuit—is how probable cause factors into this Court's analysis of Plaintiff's First Amendment claim. *See Hartman v. Moore*, 547 U.S. 250 (2006). In *Hartman*, the Supreme Court determined that proving lack of probable cause is an element of a malicious prosecution charge brought as a constitutional tort under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See Hartman*, 547 U.S. at 265–66.

The Sixth Circuit applied *Hartman* in the case of *Barnes v. Wright*, 449 F.3d 709, 717–20 (6th Cir. 2006), which involved claims of retaliatory prosecution *and* wrongful arrest. The court found *Hartman* applicable because (1) the arresting agents were the ones that initiated grand jury proceedings against the plaintiff, and (2) plaintiff was arrested only after the grand jury had indicted him. Thus, it

appears *Barnes* governs the applicability of *Hartman* to claims of wrongful arrest only when prosecution and arrest are concomitant.

Unlike in *Barnes*, the Sixth Circuit has twice deferred resolution of the probable cause question when analyzing ordinary retaliatory arrest claims. *See Kennedy*, 635 F.3d at 217; *Leonard*, 477 F.3d at 355. In both *Kennedy* and *Leonard*, the court concluded it was unnecessary to decide whether *Hartman* adds another element to every First Amendment retaliatory arrest claim brought pursuant to § 1983 because the facts of those cases demonstrated an "absence of probable cause," nonetheless.

Therefore, because the Sixth Circuit has yet to decide whether lack of probable cause is an element in retaliatory arrest claims under the First Amendment, the Court will proceed under the assumption that it is *not a required* element of such claims. As explained below, the Court grants Defendants summary judgment on Plaintiff's First Amendment claim because Plaintiff has failed to prove a *prima facie* case for First Amendment retaliatory arrest.[12]

### i. MUNICIPAL LIABILITY[13]

To the extent that Plaintiff brings her First Amendment retaliation claim against Defendant Clayton Township,[14] her claim must fail. The United States Supreme Court has long held that municipal governments may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) (collecting cases). Additionally, where the established policies of the

---

[12] The United States Supreme Court recently declined to decide whether a retaliatory arrest was actionable if supported by probable cause. *See Reichle v. Howards*, —U.S. ——, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012).

[13] Plaintiff's amended Complaint grossly fails to allege a theory of municipal liability under § 1983. The Court will nonetheless briefly discuss the issue because Plaintiff names Clayton Township as a Defendant.

[14] Clayton Township Police Department also is a named Defendant in this case. The Court notes that the department is merely a division of Clayton Township—another named Defendant—and not a separate legal entity capable of being sued. *See, e.g.*, *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (rejecting claim raised against township police department, which was subsumed within the township itself for purposes of establishing municipal liability). Accordingly, the Court considers Clayton Township and its police department as a single Defendant for purposes of this Opinion.

municipality do not violate the constitution directly, municipalities may incur § 1983 liability where they fail to adequately train their personnel such that a constitutional policy is applied in an unconstitutional manner. *City of Canton*, 489 U.S. at 387. Here, the record is wholly devoid of any unconstitutional policies of, or evidence of inadequately training by, Defendant Clayton Township. Plaintiff is merely attempting to hold this Defendant liable under a *respondeat superior* theory, a move unsupported by clearly established precedent of the Supreme Court. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Clayton Township is dismissed.

The Court will now address Plaintiff's First Amendment retaliation claim as it relates to Defendants Fuller, Moore, Sgt. Brown, and Chief Powers.

**ii. INDIVIDUAL LIABILITY**

**a. Constitutionally Protected Speech**

The Court first turns to the threshold element of a First Amendment claim—whether a person has engaged in constitutionally protected activity. Plaintiff alleges, generally, that her "criticisms" voiced at the Meeting over Clayton Township's decision to employ a police reserve officer program constitutes "constitutionally protected activity." Though Plaintiff does not articulate what specific statements or "criticisms" are allegedly afforded protection, the Court will assume, for purposes of this Opinion only, that Plaintiff has satisfied this first element. *See Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975) ("The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'" (quoting *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964))).

**b. Adverse Action**

The Court next determines whether Defendants employed an adverse action causing Plaintiff to suffer an injury that would likely "chill" a person of ordinary firmness from continuing to engage in such

13

activity.  *See Center for Bio-Ethical Reform*, 477 F.3d at 821.  Here, Plaintiff need not show that she was actually deterred from exercising her right to free speech, but rather she must show that Defendants' actions were "capable of deterring a person of ordinary firmness from exercising . . . her right." *Thaddeus-X*, 175 F.3d at 398.  Again, for purposes of this Opinion only, the Court will presume that Plaintiff's arrest satisfies this element insofar as an arrest would constitute an adverse action that would deter "a person of ordinary firmness," like Plaintiff, from exercising her First Amendment freedoms.

### c. Causal Connection Between Speech And Adverse Action

Even assuming Plaintiff proves that she engaged in conduct protected by the First Amendment and that her arrest constituted an adverse action that would "chill a person of ordinary firmness," Plaintiff ultimately fails to proffer sufficient evidence to place in dispute whether her arrest was "motivated at least in part by [her] protected conduct." *Thaddeus-X*, 175 F.3d at 394.

Plaintiff presents to the Court nothing more than bald, conclusory allegations to support her claim.  Plaintiff's amended complaint alleges that she was "set up" for an arrest because she spoke "on issues that were not popular with . . . the police department."  Plaintiff's only "evidence" to support this claim is that "[c]omparison of the video . . . from the [M]eeting and the AVL records plainly reflects that prior to any purported 'disorderly conduct' but after Plaintiff's initial criticisms about the Clayton Township public figures[,]" Defendant Fuller was called and directed to follow Plaintiff upon her exit from the Meeting.  The Court finds this assertion disingenuous and, importantly, belied by the record. The portion of the police report prepared by Defendant Sgt. Brown indicates she was informed at approximately 8:40 p.m. that Plaintiff was "possibly intoxicated."  According to the AVL records of Defendant Fuller's vehicle, he was not proximately located to the Township Hall until 8:45:52 p.m.  This time sequence supports the notion that (1) Plaintiff was observed by at least three individuals as being possibly intoxicated shortly after entering the Meeting (between 8:35–39 p.m.); (2) that those individuals

14

informed Defendant Sgt. Brown of their observations (at approximately 8:40 p.m.); (3) and, in turn, that Defendant Sgt. Brown then called and ordered Defendant Fuller to position his patrol car outside of Clayton Township Hall (Defendant Fuller arrived at 8:45:52 p.m.). Thus, the content of Plaintiff's criticisms did not "motivate" Defendant Sgt. Brown's actions; rather, Plaintiff's potential intoxication did. The Court finds that Plaintiff's assertion—*i.e.*, Defendant Sgt. Brown called Defendant Fuller after Plaintiff criticized the police department *but prior to* any "disorderly conduct"—amounts to nothing more than speculation and is unsupported by the record.

Additionally, Plaintiff can cite to nothing else in the record that demonstrates Defendants Officer Fuller and Moore's (the arresting officers) decision to arrest Plaintiff was "motivated at least in part" by Plaintiff's criticisms at the Meeting. Notably, Plaintiff fails to allege—much less offer proof—that Officer Fuller and Officer Moore were even aware that Plaintiff *criticized* the reserve officer program at the Meeting. *See Thaddeus-X*, 175 F.3d at 395 (stating that there must be a "causal connection" between the adverse action and the plaintiff's protected conduct). While Defendants, as movants, must show the absence of a genuine dispute of a material fact, "[P]laintiff is not thereby relieved of [her] own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Here the Court finds that Plaintiff fails to offer evidence that would create genuine issues of material fact and grants summary judgment to Defendants Fuller, Moore, Sgt. Brown, and Chief Powers on Plaintiff's First Amendment retaliation claim. *See Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) ("[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'") (citation omitted).

Because Plaintiff has failed to plead a *prima facie* case of First Amendment retaliatory arrest, no further inquiry is necessary. Even were the Court to assume Plaintiff met the burden of establishing that her protected conduct was a motivating factor behind her arrest, her claim would nevertheless fail because

15

the facts of this case demonstrate that Plaintiff's arrest would have taken place even in the absence of Plaintiff's criticisms at the Meeting (*i.e.* the constitutionally protected activity). *See Thaddeus-X*, 175 F.3d at 399 (stating that summary judgment may nevertheless be proper if "the defendant can show that he would have taken the same action in the absence of the protected activity").

In this case, Defendant Fuller testified as follows: "Just from the conversation I had [with Defendant Sgt. Brown], yes, I had reasonable suspicion to pull [Plaintiff] over, but I wasn't going to pull her over if she wasn't weaving. I was directed to make sure she was able to drive home, and she was not." Defendant Fuller stopped Plaintiff because he was notified of Plaintiff's possible intoxication *and* because he observed Plaintiff weaving while driving. Observing any other individual in a similar situation, Defendant Fuller would undoubtedly have "taken the same action" to dispel his suspicions, and Plaintiff has not offered affirmative evidence to the contrary. Thus, summary judgment is also proper with respect to the individual Defendants because Plaintiff's arrest would have occurred in the absence of her criticisms.

The Court will next consider Plaintiff's state-law claims.

## C. COUNTS III–V: FALSE IMPRISONMENT, FALSE ARREST, AND ASSAULT AND BATTERY

Plaintiff's amended Complaint comprises the following state-law claims: false imprisonment, false arrest, and assault and battery. These claims fail as a matter of law as all Defendants are protected by governmental immunity.

### i. MUNICIPAL LIABILITY

The tort liability of a governmental agency can be premised on two distinct theories. A governmental agency may be directly liable for its tortious conduct, or vicariously liable—in certain circumstances—for the torts committed by its officers, employees, or agents. Although Plaintiff does not clearly differentiate between direct and vicarious municipal liability theories in her Complaint—or, for

that matter, even mention Defendant Clayton Township in her state-law Counts—the Court will nevertheless address each theory in turn.

Michigan's Governmental Tort Liability Act ("GTLA") states, in relevant part, that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."   Mich. Comp. Laws § 691.1407(1).  *See also Ross v. Consumers Power Co.*, 420 Mich. 567, 608 (1984).  A "governmental agency" is defined as a state or political subdivision, the latter of which includes a "municipal corporation."  Mich. Comp. Laws § 691.1401(a), (e).  And the GTLA further defines a "municipal corporation" as, among other things, a township.  Mich. Comp. Laws § 691.1401(d).  Thus, if Defendant Clayton Township was engaged in the exercise or discharge of a governmental function during the times that have been outlined above, it is immune from tort liability unless a statutory exception applies.  *See State Farm Fire & Cas. Co. v. Corby Energy Servs., Inc.*, 271 Mich. App. 480, 491 (2006) (explaining that Michigan courts have held that governmental agencies possess broad immunity, and that the exceptions to that immunity are narrowly construed).

It is well-settled in Michigan that the operation of a police department is a governmental function.  *See Isabella Cnty. v. Michigan*, 181 Mich. App. 99, 105 (1989); *Hill v. City of Saginaw*, 155 Mich. App. 161, 170 (1986); *Dickey v. Fluhart*, 146 Mich. App. 268, 275–276 (1985).  As such, to the extent that Plaintiff desires to hold Defendant Clayton Township directly liable pursuant to her state-law tort claims, the Court grants Defendant Clayton Township summary judgment because the claims are foreclosed by governmental immunity.

Further, Defendant Clayton Township is not liable under a theory of *respondent superior* (vicarious liability).  In *Ross*, the Michigan Supreme Court held that "[r]*espondent superior* liability generally can be imposed only where the individual tortfeasor acted during the course of his or her

employment and within the scope of his or her authority."  420 Mich. 567, 624.  The court in *Ross* did, however, recognize a principal limitation on vicarious liability of governmental agencies.  By definition, a governmental agency is not liable for unauthorized acts of its officers and employees that are outside the scope of their authority.  Many cases since *Ross* have determined that when an employee commits an intentional tort, he or she is acting without authorization and outside the scope of his or her authority.  *See, e.g.*, *Payton v. City of Detroit*, 211 Mich. App. 375, 392–393 (1995).

Here, it is beyond dispute that Defendants Fuller, Moore, Sgt. Brown, and Chief Powers—as officers of Defendant Clayton Township—were engaged in governmental functions within the scope of their employment during the events at issue in this case.  Similar to *Payton*, the initial traffic stop, the decision to administer field sobriety tests, PBTs, and a DataMaster test, and to ultimately arrest Plaintiff for operating while intoxicated, are all "clearly governmental in nature."  Because the general nature of the activity in this case related to the operation of a police department, Defendant Clayton Township is immune from liability pursuant to Mich. Comp. Laws § 691.1407(1).  Moreover, even assuming that any of the individual Defendants (Fuller, Moore, Sgt. Brown, or  Chief Powers) were liable to Plaintiff for false arrest, false imprisonment, and assault and battery, Defendant Clayton Township is still afforded immunity because it cannot be found liable for the intentional torts—or unauthorized conduct—of its officers.  *See Payton*, 211 Mich. App. at 393.  *See also Ross*, 420 Mich. at 625 ("[A] city cannot be held vicariously liable for torts of its police officers committed during the course of an arrest because the officers were engaged in police activity, which is a governmental function entitled to immunity.") (citation omitted).

In short, Defendant Clayton Township is granted summary judgment on all of Plaintiff's state-law claims, as no jury could reasonably find for Plaintiff on these claims.  The Court next addresses

Plaintiff's intentional tort claims lodged against the Defendants Fuller, Moore, Sgt. Brown, and Chief Powers.

### ii. INDIVIDUAL LIABILITY

Plaintiff alleges that the individual Defendants are liable under Michigan law for false imprisonment, false arrest, and assault and battery. These claims, however, lack merit and must be dismissed.[15]

To prevail on a false arrest claim, Plaintiff must show that the individual Defendants "participated in an illegal and unjustified arrest, and that [they] lacked probable cause to do so." *Walsh v. Taylor*, 263 Mich. App. 618, 626 (2004). Next, "[t]he elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Id.* at 627 (citations and internal quotation marks omitted). False imprisonment also requires that "[t]he restraint . . . occurred without probable cause to support it." *Id.* Last, "[u]nder Michigan law an assault is 'an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.'" *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (quoting *People v. Nickens*, 470 Mich. App. 622, 628 (2004)). A battery is defined as "'an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.'" *Id.*

In *Odom v. Wayne County*, 482 Mich. 459, 480 (2008), the Michigan Supreme Court stated that the proper method for determining whether governmental immunity applies to an individual's commission of an intentional tort—such as false imprisonment, false arrest, or assault and battery—is to apply the test set forth in *Ross*. Under the *Ross* test, an employee enjoys immunity if: (1) the employee

---

[15] In sole support to avoid summary judgment on her intentional tort claims, Plaintiff incorporates by reference her Fourth Amendment arguments discussed in her brief. Yet, Plaintiff's amended Complaint contains no Fourth Amendment count and thus her arguments on that constitutional issue will not be considered by the Court. Because Plaintiff relied solely on her Fourth Amendment arguments to support her intentional tort claims, Plaintiff has failed to present arguments in response to Defendant's motion that would raise a material issue of fact. Nonetheless, the Court finds these claims are independently barred by the doctrine of governmental immunity as discussed in this Opinion.

undertook the challenged acts during the course of his employment and was acting, or reasonably believed that he was acting, within the scope of his authority; (2) the employee undertook the challenged acts in good faith or without malice; and (3) the acts were discretionary, rather than ministerial, in nature. *Odom*, 482 Mich. at 480.  An employee seeking the shield of governmental immunity bears the burden of establishing that he or she is immunized from a plaintiff's state-law claims.  *Id.* at 479.

In the present case, Plaintiff cannot seriously contend that any of the individual Defendants fail to satisfy the first and third factors of the *Ross* test.  Rather, the sole issue is whether these Defendants were acting in good faith during the circumstances surrounding Plaintiff's arrest.  Contrary to qualified immunity under federal law, which uses an objective standard, "[t]the good-faith element of the *Ross* test is subjective in nature.  It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent."  *Id.* at 481–82.  Therefore, "[t]he proponent of individual immunity must establish that he acted without malice."  *Id.* at 475.  *See also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (applying Michigan law) ("The only factor at issue here is 'good faith,' which is defined as 'without malice.'").  Even viewing the evidence in a light most favorable to Plaintiff, no reasonable juror would conclude that the individual Defendants acted with malice.

Here, it is undisputed that Defendant Sgt. Brown notified Defendant Fuller of Plaintiff's possible intoxication.  At Defendant Sgt. Brown's instruction, Defendant Fuller followed Plaintiff in his patrol car as she left the Meeting.  Defendant Fuller testified that he observed Plaintiff's vehicle weaving and/or swerving between the center and shoulder lines.  Armed with the knowledge of Plaintiff's possible intoxication and his observances of Plaintiff's vehicle, Defendant Fuller conducted a traffic stop.  As the VidMic and deposition testimony reveals, Defendant Fuller sought to "make sure [Plaintiff] was ok to drive."  Defendant Fuller then proceeded to administer field sobriety tests and PBTs to Plaintiff.  The fact

that the parties dispute both the number of tests Plaintiff passed or failed and the way in which some of the tests were administered is irrelevant. What remains relevant, however, is Defendant Fuller's subjective, good-faith belief that Plaintiff might be intoxicated; that in an attempt to dispel any suspicions of intoxication, he—in good faith—followed protocol by administering the five (5) field sobriety tests; and that he believed it was appropriate to have Plaintiff submit to the PBTs, one of which produced a partial result of 0.08. *See* Mich. Comp. Laws § 257.625a (permitting a police officer to arrest a person based in whole or in part upon the results of a PBT). Given all of these circumstances, combined with the Court's review of the record evidence—including a meticulous study of the VidMid recording—and Plaintiff's failure to offer any evidence of maliciousness, the evidence does not support a finding that Defendant Fuller, or any of the individual Defendants, possessed malicious intent at any time.

In short, Defendants Fuller, Moore, Sgt. Brown, and Chief Powers are entitled to governmental immunity regarding Plaintiff's intentional tort claims.

## D. COUNT I – VIOLATION OF FREEDOM OF INFORMATION ACT; COUNT VI – DENIAL OF DUE PROCESS; AND DEFENDANT DALE JONES

In her response brief, Plaintiff voluntarily asks the Court to dismiss Counts I and VI of her amended complaint, and to dismiss any and all claims against Defendant Dale Jones. Accordingly, the Court grants summary judgment to all Defendants with respect to Counts I and VI, and grants summary judgment to Defendant Dale Jones with respect to all of Plaintiff's claims.

**V. CONCLUSION**

Accordingly, for the reasons stated in this Opinion, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [dkt 26] is GRANTED and Plaintiff's claims against all Defendants are DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Consolidate [dkt 39] is DENIED as moot.

IT IS SO ORDERED.

<u>s/Lawrence P. Zatkoff</u>
Hon. Lawrence P. Zatkoff
U.S. District Judge

Dated: March 6, 2014